UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
KEVIN MOITOSO, TIM LEWIS,         )
MARY LEE TORLINE, and             )
SHERYL ARNDT, individually        )
and as representatives of         )
a class of similarly situated     )
persons, and on behalf of the     )
FIDELITY RETIREMENT SAVINGS PLAN, )
                                  )
                 Plaintiffs,      )
                                  )
          v.                      )          CIVIL ACTION
                                  )          NO. 18-12122-WGY
FMR LLC, FMR LLC                  )
FUNDED BENEFITS INVESTMENT        )
COMMITTEE, FMR LLC                )
RETIREMENT COMMITTEE,             )
FIDELITY MANAGEMENT & RESEARCH    )
COMPANY, FMR CO., INC., and       )
FIDELITY INVESTMENTS              )
INSTITUTIONAL OPERATIONS          )
COMPANY, INC.,                    )
                                  )
                 Defendants.      )
_____)
```

YOUNG, D.J.                                    October 8, 2019

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION

Our civil justice system regularly relies on citizen juries to decide intricate fact issues.  Indeed, "[i]n the fact-finding line, anything a judge can do a jury can do better.  The best sociological evidence confirms this truth."  <u>Marchan</u> v. <u>John Miller Farms, Inc.</u>, 352 F. Supp. 3d 938, 947 (D.N.D. 2018)

(citing James Surowiecki, <u>The Wisdom of Crowds</u> (2004)).

Nevertheless, the Seventh Amendment to the U.S. Constitution

does not endow parties with a right to a jury trial in all civil

cases but only "[i]n Suits at common law."

Here, the parties present the Court with a close call as to

whether their dispute includes a claim best characterized as a

suit at common law.  The plaintiffs seek a money award on behalf

of a plan subject to the Employee Retirement Income Security Act

of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (1974), for

the plan fiduciaries' alleged breaches of fiduciary duty.  Class

Action Compl. 1-2, ECF No. 1.  The plan fiduciaries object to a

jury trial and insist no such right exists here notwithstanding

the principle that "[m]oney damages are, of course, the classic

form of <u>legal</u> relief."  <u>See</u> <u>Mertens</u> v. <u>Hewitt Assocs.</u>, 508 U.S.

248, 255 (1993).  After close study of historical practice and

ERISA's text, this Court concludes that a money award, if any,

that the plaintiffs might win would be an equitable surcharge,

not legal damages.  As a result, the Court rules that the

Seventh Amendment does not require a jury trial in this case.

## A.  Procedural History

The plaintiffs, Kevin Moitoso, Tim Lewis, Mary Lee Torline,

and Sheryl Arndt, individually and as representatives of a class

of similarly situated persons, and on behalf of the Fidelity

Retirement Savings Plan (collectively, the "Plaintiffs"), filed

this suit against FMR LLC, the FMR LLC Funded Benefits
Investment Committee, the FMR LLC Retirement Committee, Fidelity
Management & Research Company, FMR Co., Inc., and Fidelity
Investments Institutional Operations Company, Inc.
(collectively, "Fidelity") on October 10, 2018. Class Action
Compl. 1. On October 19, 2018, the Plaintiffs filed a demand
for a jury trial. Demand Jury Trial, ECF No. 10. Thereafter,
the Plaintiffs amended their complaint thrice, once as of right
and twice with leave from the Court. Am. Compl., ECF No. 31;
Second Am. Compl., ECF No. 37; Third Am. Compl., ECF No. 56.
Five days after filing their second amended complaint, on
January 15, 2019, the Plaintiffs again demanded a jury trial.
Am. Demand Jury Trial, ECF No. 44. The Plaintiffs reasserted
their jury trial demand on April 4, 2019, after filing their
third amended complaint. Second Am. Demand Jury Trial
("Operative Demand"), ECF No. 70.

On April 17, 2019, Fidelity, for the first time, moved to
strike the Plaintiffs' jury demand. Defs.' Mot. Strike Pls.'
Demand Jury Trial, ECF No. 72; Defs.' Mem. Supp. Mot. Strike
Pls.' Demand Jury Trial ("Defs.' Mem."), ECF No. 73. The
Plaintiffs opposed the motion to strike on May 1, 2019. Br.
Opp'n Mot. Strike Jury Demand ("Opp'n"), ECF No. 75. On May 2,
2019, the Plaintiffs filed their fourth amended complaint, with
Fidelity's agreement. Fourth Am. Compl. ("Operative Compl."),

ECF No. 77.  The day before the hearing on May 7, 2019, Fidelity filed a reply, ECF No. 82.[1]

The Operative Demand requests a trial by jury on counts one through four and count six of the Operative Complaint, which seek an award of losses for Fidelity's alleged breaches of fiduciary duty.  Id. at 1.  In the alternative, the Plaintiffs request an advisory jury.  Id. at 2.

### B.  Factual Background

The Plaintiffs are former Fidelity employees who participated in the Fidelity Retirement Savings Plan (the "Plan").  Operative Compl. ¶¶ 18-20.  They allege that Fidelity breached its fiduciary duties in managing the Plan.  Id. ¶¶ 127-154.  The Plaintiffs request, among other things, that Fidelity restore to the Plan the losses that the Plan suffered as a consequence of Fidelity's alleged breaches of fiduciary duty.  Id. at 64.  The Plaintiffs state that, because they are former employees, they immediately may withdraw a proportional share of the loss award from the Plan if and when the Court enters judgment in their favor.  Opp'n 15.

---

[1] Fidelity filed a Notice of Supplemental Authority on August 9, 2019, ECF No. 112, referring the Court to Judge Gorton's decision in Tracey v. Massachusetts Institute of Technology, Civ. A. No. 16-11620-NMG, 2019 WL 3755948 (D. Mass. Aug. 8, 2019).  The Plaintiffs responded on August 21, 2019, ECF No. 113.

## II.  LEGAL FRAMEWORK

If a party demands a jury trial on any issue under Rule 38 of the Federal Rules of Civil Procedure, then the Court puts any such issue to the jury unless the Court "on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a).  Even if no jury trial right exists in a case, the Court may still empanel an advisory jury.  Fed. R. Civ. P. 39(c)(1).

Regardless of the existence of a jury right, the Court intends to empanel an advisory jury here.  <u>See</u> Fed. R. Civ. P. 39(c); <u>see also</u> <u>Marchan</u>, 352 F. Supp. 3d at 947-49 (explaining that juries can calculate monetary relief even better than judges).  The Court endeavors to explain below why it concludes that the Seventh Amendment does not require a jury to resolve the factual issues that the Plaintiffs raise in counts one through four and count six of the operative complaint.

The Seventh Amendment Jury Trial Clause guarantees that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of jury trial shall be preserved."  "[A]t common law" refers to legal, as opposed to equitable, claims.  <u>Curtis</u> v. <u>Loether</u>, 415 U.S. 189, 193 (1974) (quoting <u>Parson</u> v. <u>Bedford</u>, 28 U.S. (3 Pet.) 433, 446-47 (1830)).  Further, the Jury Trial Clause requires a jury to resolve discrete claims to which a jury trial historically

attached even if the complaint also contains nonjury claims. Ross v. Bernhard, 396 U.S. 531, 538-40 (1970).

This Court weighs two factors to determine whether this suit involves legal or equitable issues. See Full Spectrum Software, Inc, v. Forte Automation Sys., Inc., 858 F.3d 666, 675 (1st Cir. 2017). First, this Court resolves "whether the current action is 'analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century.'" Id. (quoting Braunstein v. McCabe, 571 F.3d 108, 118 (1st Cir. 2009)). Second, and "more important," the Court decides whether the requested remedy is legal or equitable. Id. (quoting Granfianciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)).[2] If, on balance, these two factors indicate that the complaint presents only equitable issues, then the jury trial right does not attach. Cf. Braunstein, 571 F.3d at 122 (analyzing second issue even after ruling that the first disfavored a jury trial).

---

[2] In some cases, the Court must resolve a third question, too. If the first two factors favor the jury trial right and Congress provided for a non-Article III adjudicator for the claim, the Court must decide if the issue implicates public or private rights. Full Spectrum, 858 F.3d at 675. Here, Congress vested jurisdiction in the federal district courts, thereby obviating that inquiry. See 29 U.S.C. § 1132(a)(2)-(3), (e)(2).

## III. ANALYSIS

Considering the two factors above, this Court GRANTS
Fidelity's motion to strike the Plaintiffs' jury demand. First,
the chancery courts of old traditionally heard claims for breach
of fiduciary duty, which militates against a jury trial right.
Second, ERISA's drafters provided for the equitable remedy of
surcharge, not the legal remedy of damages, for breach of
fiduciary duty. The damages question is a close one, however,
because the Court must reconcile apparently contradictory
Supreme Court pronouncements and ERISA's express invocation of
equitable remedies with the absence of an explicit grant of
discretion to the presiding judge in awarding monetary relief.
Ultimately, this Court concludes that these apparent
contradictions are not contradictions at all because ERISA's
drafters meant to incorporate the equity-based doctrines of
trust law for actions that beneficiaries bring against
fiduciaries. Consequently, the jury trial right does not attach
to the Plaintiffs' claims.

### A. Equity Courts Traditionally Heard Breach of Fiduciary Duty Claims

This Court construes the Plaintiffs' suit as most closely
analogous to a trust beneficiary's cause of action against a
trustee for breach of fiduciary duty. ERISA fiduciary duty
claims draw directly from trust law and thus fall within "the

[7]

bailiwick of the courts of equity." CIGNA Corp. v. Amara, 563
U.S. 421, 439-40 (2011) (quoting 4 Austin Wakeman Scott et al.,
Scott and Ascher on Trusts § 24.1, at 1654 (5th ed. 2007)).
Though this tradition admitted of at least one exception, the
Plaintiffs fail to fit their claims into the exception that they
identify. See Opp'n 7-9.

Congress defined the scope of ERISA fiduciaries' duties
using the common law of trusts. Central States, Se. & Sw. Areas
Pension Fund v. Central Transp., Inc., 472 U.S. 559, 570 (1985).
The Supreme Court has observed that "action[s] by a trust
beneficiary against a trustee for breach of fiduciary duty . . .
were within the exclusive jurisdiction of courts of equity."
Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494
U.S. 558, 567 (1990) (citing 2 Joseph Story, Commentaries on
Equity Jurisprudence § 960 (13th ed. 1886); Restatement (Second)
of Trusts § 199(c) (1959)). Moreover, this Court has commented
previously that an "action to charge . . . [ERISA] trustees
historically sounds in equity and has significant differences
from the usual statutory tort claim." Brotherston v. Putnam
Invs., LLC, Civ. A. No. 15-13825-WGY, 2017 WL 2634361, at *2 n.3
(D. Mass. June 19, 2017), aff'd in part, vacated in part,
remanded, 907 F.3d 17 (1st Cir. 2018), petition for cert. filed,
No. 18-926 (Jan. 16, 2019). Therefore, "[t]he most thorough
scholarship confirms that no constitutional right to a jury

trial attaches under the Seventh Amendment." Id. (citing Note,
The Right to Jury Trial in Enforcement Actions Under Section
502(a)(1)(B) of ERISA, 96 Harv. L. Rev. 737, 750-56 (1983);
Denise Drake Clemow & Lisa Hund Lattan, ERISA Section 510
Claims: No Right to a Jury Trial Can Be Found, 73 Neb. L. Rev.
756, 774-78 (1994); David M. Cook & Karen M. Wahle, Procedural
Aspects of Litigating ERISA Claims 53-56 (Am. Bar Ass'n 2000)).[3]

Conversely, the Plaintiffs contend that law courts did
entertain fiduciary duty claims where plaintiffs asserted an
entitlement to immediate and unconditional payment (the
"Immediate and Unconditional Payment Exception"). Opp'n 7. The
Plaintiffs point to the first and third Restatements of Trusts,
which recognize that "a beneficiary [may] proceed against a

---

[3] The Plaintiffs correctly observe that this footnote was
dicta, but then err in construing the discussion as a suggestion
that they file a jury demand. See Opp'n 15. This Court
intended no such thing. It merely observed the following:

> This parallelism and the extraordinary money
> damages sought by the Plaintiffs' counsel on behalf of
> the class leads one to wonder why they did not demand
> jury in this case where they assert a plan-wide ERISA
> fiduciary breach claim for money damages. See Great-
> West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204,
> 210 (2002). As will be seen, however, this action to
> charge the trustees historically sounds in equity and
> has significant differences from the usual statutory
> tort claim.

Brotherston, 2017 WL 2634361, at *2 n.3. In particular, Great-
West dealt with an action for reimbursement by a plan fiduciary
against a beneficiary, not an action for breach of fiduciary
duties by a beneficiary against a fiduciary, as is the case here
and in Brotherston. See Great-West, 534 U.S. at 207-10.

trustee at law to enforce a right to a chattel or money if the
trustee has violated an immediate, unconditional duty to
transfer the chattel or pay the money to the beneficiary,"
Restatement (Third) of Trusts § 95 cmt. a (2012). See Opp'n 7
(citing Third Restatement and quoting Restatement (First) of
Trusts § 198(1) (1935) ("If the trustee is under a duty to pay
money immediately and unconditionally to the beneficiary, the
beneficiary can maintain an action at law against the trustee to
enforce payment.")). Despite the fact that they technically
brought the complaint on behalf of the Plan, the Plaintiffs
insist that they have an immediate and unconditional right to
relief because they can withdraw funds on demand. See Opp'n 8
(citing Evans v. Akers, 534 F.3d 65, 74 (1st Cir. 2008)).

Although the Plaintiffs' argument has superficial appeal,
historical practice undermines it. The authorities that the
Plaintiffs cite reveal that beneficiaries invoked the Immediate
and Unconditional Payment Exception where they sought a readily
identifiable sum from the trustee, whom the law courts treated
as something like a debtor. As a leading trusts treatise
explains:

> Even before the merger of law and equity, the courts
> had concluded that when a trustee was under a duty
> immediately and unconditionally to pay money to a
> beneficiary, the beneficiary could maintain an action of
> debt, general assumpsit, or a modern-day equivalent. In
> such a case, the trustee was treated for procedural

> purposes as being indebted to the beneficiary in a <u>fixed</u>
> <u>amount</u>.

4 Scott, <u>supra</u>, § 24.2.1, at 1660 (emphasis added) (citing
<u>Restatement (Second) of Trusts</u> § 198 cmt. b (1959)). The Third
Restatement cites <u>Scott</u> and observes that "traditional
principles allow a beneficiary to proceed against a trustee at
law to enforce a right to a chattel or money if the trustee has
violated an immediate, unconditional duty to transfer the
chattel or pay the money to the beneficiary." <u>Restatement</u>
<u>(Third) of Trusts</u> § 95 cmt. a & rptr's n. (citing 4 Scott,
<u>supra</u>, §§ 24.1–24.3.5, 24.9.2, at 1654–67, 1700). The
reporter's notes to the Third Restatement make clear that the
Third Restatement is "consistent in principle" with the Second
Restatement's approach, which illustrates this concept with
cases where the trustee refused to make required income payments
from the trust corpus to the beneficiary. <u>See</u> <u>Restatement</u>
<u>(Second) of Trusts</u> § 198 cmt. b; <u>Restatement (First) of Trusts</u>
§ 198 cmt. b.

    In contrast, the Plaintiffs' claims do not depend on
Fidelity's failure to turn over a set amount of money but on an
assertion that Fidelity's breach of fiduciary duty caused the
Plan's income to diminish. Operative Compl. ¶ 3; <u>see also</u> <u>Jo</u>
<u>Ann Howard & Assocs., P.C.</u> v. <u>Cassity</u>, 868 F.3d 637, 648 (8th
Cir. 2017) ("So long as 'there has been a final settlement of

accounts and nothing remains on the part of the trustee but to pay over the amount found to be due,' the beneficiary has a legal clam to recover a specific sum of money.  But when there has been no accounting made and no settlement due, 'the only remedy of the [beneficiary is] by a bill in equity and not by an action at law.'" (alteration in original) (quoting Howard's Estate v. Howe, 131 S.W.2d 517, 520 (Mo. 1939))).  At least one leading contemporary scholarly text reveals that this approach persists.  See 4 Scott, supra, § 24.2, at 1659 ("Although the beneficiary's remedies against the trustee are ordinarily equitable there are certain situations in which a legal remedy has been permitted.  In these situations, the trustee's liability is definite and clear, and no accounting is necessary to establish it.").

The Plaintiffs urge the Court to follow the lead of Dixon v. Northwestern National Bank of Minneapolis and adopt a wider reading of the Immediate and Unconditional Payment Exception. See 297 F. Supp. 485, 489 (D. Minn. 1969); Opp'n 8.  There, the United States District Court for the District of Minnesota ordered a jury trial on trust beneficiaries' claim against a trustee who allegedly breached his fiduciary duties by investing trust funds into worthless stock.  Dixon, 297 F. Supp. at 489; see also Jefferson Nat'l Bank of Miami Beach v. Central Nat'l Bank in Chi., 700 F.2d 1143, 1150 (7th Cir. 1983) (quoting Dixon

and reaching similar result).  As the United States District Court for the Southern District of New York in _Nobile_ v. _Pension Committee_ noted, however, both the _Dixon_ and _Jefferson National Bank_ decisions erred in relying solely on the complaint's request for money to rule that law courts could have heard them. 611 F. Supp. 725, 728-29 (S.D.N.Y. 1985) (rejecting application of exception because complaint did not allege that "the trustee failed to perform a ministerial act"); see also _Jo Ann Howard & Assocs., P.C._, 868 F.3d at 648 (distinguishing _Dixon_ and _Jefferson National Bank_ and citing _Nobile_).

Moreover, notwithstanding the Plaintiffs' right to withdraw their funds from the Plan on demand, "recovery for a violation of § 409 inures to the benefit of the plan as a whole." _Massachusetts Mut. Life Ins. Co._ v. _Russell_, 473 U.S. 134, 140 (1985).  Although all the Plaintiffs are vested, see Operative Compl. ¶ 3, any money award will go to the Plan first.  See _Massachusetts Mut._, 473 U.S. at 140.  This pit-stop in the Plan's coffers buttresses the conclusion that there would still be some accounting to do, and thus the Plaintiffs cannot claim a definite sum of money.  The First Circuit's _Evans_ decision does not point in a different direction; there, the First Circuit shot down an argument that ERISA beneficiaries did not have constitutional standing to sue on behalf of the plan.  See 534 F.3d at 74-75.  If the Plaintiffs prevail on these claims,

Fidelity ought "strive to allocate any recovery to the affected participants in relation to the impact the fiduciary breaches had on their particular accounts." See id. That does not change the fact that the Plaintiffs do not allege a direct right to payment of sum certain.

Therefore, the Plaintiffs' claims are of the type that equity, not law, courts traditionally heard.

**B.   Losses Under ERISA Section 409(a) Amount to the Equitable Remedy of Surcharge**

The Court views the Plaintiffs' monetary remedy request as one for surcharge, not damages. The Supreme Court has described the surcharge remedy thusly:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was exclusively equitable. The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

Amara, 563 U.S. at 441-42 (citations and internal quotations omitted). Surcharge "is most fittingly defined as 'the imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties.'" LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 7 (1st Cir. 1999) (alteration omitted)

(citing <u>Black's Law Dictionary</u> 1441 (6th ed. 1990)).  That is

precisely the remedy that the Plaintiffs seek, and ERISA allows.

The Plaintiffs argue that ERISA section 409(a), which

describes the "liability for breach of fiduciary duty" under

ERISA, does not give courts the authority to surcharge

fiduciaries.  Opp'n 9-10.  That statute reads:

> Any person who is a fiduciary with respect to a
> plan who breaches any of the responsibilities,
> obligations, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to
> such plan any losses to the plan resulting from each
> such breach, and to restore to such plan any profits of
> such fiduciary which have been made through use of assets
> of the plan by the fiduciary, and shall be subject to
> such other equitable or remedial relief as the court may
> deem appropriate, including removal of such fiduciary.
> A fiduciary may also be removed for a violation of
> section 1111 of this title.

29 U.S.C. § 1109(a).  The Plaintiffs contend that four

characteristics of section 409 support a ruling that it

authorizes legal damages, not surcharge: (1) employing the word

"losses"; (2) using the mandatory word "shall"; (3) rendering

fiduciaries "personally liable"; and (4) authorizing "such other

equitable or remedial relief as the court may deem appropriate."

Opp'n 9-12, 16-17.

The Plaintiffs' statutory arguments miss the forest for the

trees and elide the nature of the surcharge remedy.  First, the

focus on the word "losses" foists too much weight on a Supreme

Court case, <u>Mertens</u> v. <u>Hewitt Associates</u>, which decided only

that a money award in an action between nonfiduciaries

constitutes legal damages, not equitable relief, for the

purposes of ERISA section 502(a)(3). 508 U.S. at 257-59; Opp'n

10-12. As relevant there, section 502(a)(3) permits plaintiffs

"to obtain other appropriate equitable relief." <u>See</u> 29 U.S.C.

§ 1132(a)(3). The Supreme Court in <u>Mertens</u> took pains to

emphasize that the plaintiffs sought relief only under that

subsection. <u>Id.</u> at 256-57, 261-62. As a result, <u>Mertens</u> does

not control the description of the remedy that the Plaintiffs

demand here.

Instead of focusing on the holding of the case, the

Plaintiffs instead resort to exhorting the Court to pay

attention to a passing discussion, not necessary to the

decision, in which the Supreme Court summarizes section 409:

> Section 409(a), 29 U.S.C. § 1109(a), makes
> fiduciaries liable for breach of these duties, and
> specifies the remedies available against them: The
> fiduciary is personally liable for damages ("to make
> good to [the] plan any losses to the plan resulting from
> each such breach"), restitution ("to restore to [the
> plan] any profits of such fiduciary which have been made
> through use of assets of the plan by the fiduciary"),
> and for "such other equitable or remedial relief as the
> court may deem appropriate," including removal of the
> fiduciary.

<u>Id.</u> at 252.

While such a declaration, even if in dicta, ordinarily

would move the Court, the Supreme Court clarified <u>Mertens</u> in

<u>Amara</u>, 563 U.S. at 439-42. There, the Supreme Court held that

an "award of make-whole [monetary] relief" constituted an equitable surcharge because "the defendant in this case, unlike the defendant in Mertens, is analogous to a trustee[, which] makes a critical difference." Id. at 442. Although the Supreme Court in Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan reaffirmed Mertens' holding that legal remedies that an equity court could award when a nonfiduciary appears before it in an ancillary matter are not equitable remedies, it also did not repudiate Amara's distinction. See 136 S. Ct. 651, 660 & n.3 (2016).

The Plaintiffs also rely on Maz Partners, LP v. Shear (In re PHC, Inc. S'holder Litig.), 894 F.3d 419, 425, 435-36 (1st Cir. 2018), cert. denied sub nom. Shear v. MAZ Partners, LP, 139 S. Ct. 489 (2018), to support the proposition that fiduciary breach claims may have legal and equitable dimensions. Opp'n 2, 12-13. The First Circuit ruled as much in the context of observing that courts may "order appropriate equitable relief" for fiduciary breach under Massachusetts law "even when a remedy at law is also available." See 894 F.3d at 435 (citing Allison v. Eriksson, 479 Mass. 626, 638 (2018); Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 527 n.32 (1997)). The Plaintiffs' argument thus assumes its own conclusion: that a remedy at law is available under ERISA. That Massachusetts allows victims of a fiduciary breach to recover damages --

despite damages as such not constituting an element of the cause of action -- does not affect this Court's statutory analysis here.  See Shear, 894 F.3d at 435-36.

Moreover, the First Circuit recently has incorporated the Third Restatement of Trusts' definition of losses into ERISA section 409(a).  See Brotherston v. Putnam Investments, LLC, 907 F.3d 17, 31 (1st Cir. 2018).  This definition of losses characterizes the losses remedy as a "surcharge."  See id. (quoting Restatement (Third) of Trusts § 100 cmt. b(1)).  Therefore, the Court follows the Supreme Court's recent pronouncement in Amara that losses that a court assesses against a trustee constitute part of a surcharge, not damages.[4]  See

---

[4] Ironically, Amara's reading of the word "losses" to provide for equitable relief against a trustee may redound to the Plaintiffs' benefit, for it permits the Court to "look forward" in putting the Plaintiffs in "the rightful position" were it to find that Fidelity breached its fiduciary duty as opposed to "restor[ing them] to the position [they] were in." See Samuel L. Bray, Fiduciary Remedies, in Oxford Handbook of Fiduciary Law 449, 456 (Evan J. Criddle, Paul B. Miller & Robert H. Sitkoff eds., 2019) (discussing "[e]quitable compensation[, which] is a remedy that looks like damages," and observing that courts refer to that remedy in the trusts context as surcharge); see also Restatement (Third) of Trusts § 100 cmt. b(1) ("If a breach of trust causes a loss, including any failure to realize income, capital gain, or appreciation that would have resulted from proper administration of the trust, the trustee is liable for the amount necessary to compensate fully for the breach."); id. § 95 & cmt. b ("If a breach of trust causes a loss, including any failure to realize income, capital gain, or appreciation that would have resulted from proper administration, the beneficiaries are entitled to restitution and may have the trustee surcharged for the amount necessary to compensate fully for the consequences of the breach.").

Perez v. Silva, 185 F. Supp. 3d 698, 702-05 (D. Md. 2016)
(reaching similar conclusion with respect to action brought by
Secretary of Labor on behalf of plan beneficiaries against plan
fiduciary).

Second, the Plaintiffs' semantic arguments about the word
"shall" reach too far.  They cite the commentary to section 95
of the Third Restatement of Trusts for the proposition that
whether to issue surcharge lies in the Court's discretion.
Opp'n 16-17.  Comment d to that section provides that if a court
concludes that "it would be unfair or unduly harsh to require
the trustee to pay, or pay in full, the liability that would
normally result from a breach of trust, the court has equitable
authority to excuse the trustee in whole or in part from having
to pay that liability."

Yet the phrase "shall be personally liable" applies not
only to "any losses" but also to "restore to such plan any
profits of such fiduciary which have been made through use of
assets of the plan."  29 U.S.C. § 1109(a).  Congress must have
thought at least one of these remedies was "equitable" because
after listing them it provided that fiduciaries "shall be
subject to such other equitable or remedial relief."  See id.
(emphasis added); Terry, 494 U.S. at 572 (observing that
Congress's characterization of a statutory remedy as equitable
constitutes a factor counseling in favor of calling a remedy

equitable for Seventh Amendment purposes).  What's more, the

ability to recoup secret profits exemplifies an equitable

remedy.  See Terry, 494 U.S. at 570 ("[W]e have characterized

damages as equitable where they are restitutionary, such as in

'action[s] for disgorgement of improper profits.'" (quoting Tull

v. United States, 481 U.S. 412, 424 (1987) (alteration in

original))); cf. Curtis, 415 U.S. at 197 (holding that monetary

remedy was legal damages in part because the factfinder lacked

discretion and award could not be viewed as disgorgement).

Three factors thus lead the Court to the conclusion that

"shall" does not mean that section 409(a) "losses" qualify as

legal damages.  First, Congress said that it created equitable

remedies in section 409(a).  See Terry, 494 U.S. at 572.

Second, the Third Restatement contemplates that courts

ought use their discretion to excuse a breach of trust only in

"special circumstances."  Restatement (Third) of Trusts § 95

cmt. d.

Third, not all courts recognized that an equity court could

refuse to surcharge a defendant who had breached a trust, see 4

Scott, supra, § 24.9.2, at 1700, and, indeed, only six states

appear to have adopted the uniform act that the reporter's notes

to comment d of the Restatement cites, Christina Bogdanski,

Note, The Uniform Trust Code and the Common Law: An Analysis of

Three Sections of the Code That Deviate from the Common Law and

_Why the Drafters Changed the Law_, 37 Cardozo L. Rev. 1907, 1912
n.31 (2016).  And when the American colonies split from England,
England had not yet enacted its statute empowering courts to
excuse breaches of trust.  See generally Michael Haley, Section
61 of the Trustee Act 1925: A Judicious Breach of Trust? 76
Cambridge L.J. 537 (2017) (explaining that England began
limiting trustee liability for breach of trust by statute after
experiencing a "trustee chill" in the late nineteenth century).
That fact ultimately persuades the Court, since the 18th-century
common law of England is paramount in the Seventh Amendment
analysis.  Butler v. Bateman (In re Bateman), 601 B.R. 700, 705
n.3 (D. Mass. 2019) (quoting United States v. Wonson, 1 Gall. 5,
28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (Case No. 16,750)
(Story, J., sitting as Circuit Justice)).  Therefore, although
Congress's choice to grant discretion counsels in favor of
deeming equitable a monetary remedy, its refusal to grant
discretion does not necessarily resolve the Seventh Amendment
question one way or the other.  See Curtis, 415 U.S. at 197.

     The Plaintiffs' remaining two arguments -- that section
409(a) must authorize a legal remedy because it provides that
fiduciaries are "personally liable" and allows "such other
equitable or remedial relief" -- falter for similar reasons.
Surcharge, disgorgement of profits, and other forms of equitable
compensation cause a defendant to become personally liable for

amounts of money.  See Bray, supra, at 456.  Those remedies thus constitute exceptions to the "general rule" that courts direct equitable remedies "against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets."  See Montanile, 136 S. Ct. at 658–59 (quoting 4 Spencer W. Symons, Pomeroy's Equity Jurisprudence § 1234, at 694 (5th ed. 1941) (omission in original)).[5]

Furthermore, reading section 409(a) to authorize surcharge would not eviscerate any relevant distinction between "equitable" and "remedial" relief, as the Plaintiffs suggest. See Opp'n 10 (citing Mertens, 508 U.S. at 252, 256-59).  As discussed above, Mertens and Amara stand for the notion that the nature of a remedy is specific to the nature of parties to the claim and the claim itself.  Mertens limited the meaning of "equitable" to the core of equity jurisdiction because to do otherwise would render that word superfluous.  Mertens, 508 U.S.

---

[5] Montanile decided only that a money remedy for breach of an equitable lien on specific property did not retain its equitable character after the defendant "dissipated" the subject of the lien.  136 S. Ct. at 658-59.  In such a case, the claim loses its equitable character because there is no longer a specific item that the plaintiff is entitled to possess, and the plaintiff seeks only to be put back in his previous condition. See Bray, supra, at 456.  Here, in contrast, surcharge permits a plaintiff to receive monetary relief that might place him in a better place than where he started because of surcharge's forward-looking nature.  See id.

at 257–58.  It does not follow that actions and remedies in the

core of equity jurisdiction, such as equitable surcharge, fall

out of section 409(a)'s scope.  <u>See</u> 29 U.S.C. § 1109(a).

Similarly, Congress used the word "remedial," not "legal" in

section 409(a).  Interpreting "remedial" to mean "legal" (or

"equitable") would elide the apparent distinction that Congress

made in other sections of ERISA.[6]  <u>See</u> <u>Mertens</u>, 508 U.S. at 257–

58 & n.8.  The Court thus considers that the word "remedial"

might permit the Court to experiment in fashioning just relief

that may not squarely fall into the traditional categories of

equitable or legal relief.  <u>Cf.</u> 15 U.S.C. § 3608(d) (commanding

courts to "exercise its authority to grant remedial relief as

necessary" upon ruling a lease unconscionable and providing that

"[s]uch relief may include, but shall not be limited to

---

[6] Where Congress chose to use the word "legal," it might
have done so in order to effect its intent to "provide the full
range of legal and equitable remedies available in both state
and federal courts."  <u>Cf.</u> Opp'n 10 (citing H.R. Rep. No. 93-533,
<u>reprinted in</u> 1974 U.S.C.C.A.N. 4639, 4655; S. Rep. No. 93-127,
<u>reprinted in</u> 1974 U.S.C.C.A.N. 4838, 4871); <u>see also</u> <u>Mertens</u>,
508 U.S. at 258-59 (mentioning ERISA's distinction between
equitable and legal relief in 29 U.S.C. §§ 1024(a)(5)(C),
1132(g)(2)(E), 1303(e)(1), 1451(a)(1)).  Congress did not do so
in section 409(a), perhaps because it recognized that successful
plaintiffs in fiduciary breach cases receive equitable remedies.
<u>See</u> <u>In re Evangelist</u>, 760 F.2d 27, 29-31 (1st Cir. 1985)
(Breyer, J.) (reasoning that because Congress was aware that
"[a]ctions for breach of fiduciary duty, historically speaking,
are almost uniformly actions 'in equity' -- carrying with them
no right to trial by jury," <u>id.</u> at 29, Congress's use of the
word "damages" in a securities statute did not convert the
statute's accounting remedy into legal damages).

rescission, reformation, restitution, the award of damages and reasonable attorney fees and court costs").

In any event, in this case the Court has no need to define "remedial" in the context of section 409(a) and, aside from the preceding musings on the matter, does not do so. As the Court explains above, section 409(a)'s losses remedy is equivalent to a surcharge. Because the Plaintiffs base their jury trial right on that provision alone, Opp'n 10-12, the possibility that some hypothetical "remedial relief" might be more analogous to a legal, rather than equitable, remedy does not affect the Plaintiffs' jury trial right in this case.

Therefore, this Court rejects the Plaintiffs' attempt to label as legal the losses remedy that section 409(a) authorizes.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS Fidelity's motion to strike the Plaintiffs' jury demand, ECF No. 72. Nonetheless, because citizen juries play a vital role in our democracy and so as to preserve the Plaintiffs' rights, this Court shall empanel an advisory jury.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE