UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kevin Moitoso, Tim Lewis, Mary Lee Torline, and Sheryl Arndt, individually and as representatives of a class of similarly situated persons, and on behalf of the Fidelity Retirement Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>FMR LLC, the FMR LLC Funded Benefits Investment Committee, the FMR LLC Retirement Committee, Fidelity Management & Research Company, FMR Co., Inc., and Fidelity Investments Institutional Operations Company, Inc.,<br><br>Defendants. | Case No. 1:18-cv-12122-WGY<br><br>**DECLARATION OF KAI RICHTER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Kai Richter, declare and state as follows:

1. I am a partner at Nichols Kaster, PLLP ("Nichols Kaster"), and am one of the attorneys of record for Plaintiffs in the above captioned action. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## Settlement Terms

2. Attached hereto as **Exhibit A** is a true and correct copy of the proposed Class Action Settlement Agreement.[1] The Settlement resolves Plaintiffs' class action claims against FMR LLC, the FMR LLC Funded Benefits Investment Committee, the FMR LLC Retirement Committee, Fidelity Management & Research Company, FMR Co., Inc., and Fidelity Investments Institutional Operations Company, Inc. (collectively, "Defendants") regarding Defendants' administration and management of the Fidelity Retirement Savings Plan ("Plan").

---

[1] All capitalized terms have the meaning assigned to them in Article 1 of the Settlement Agreement, unless otherwise defined herein.

1

3.      The Settlement Agreement applies to the following Class:

> [A]ll participants and beneficiaries of the FMR LLC Profit Sharing Plan or the Fidelity Retirement Savings Plan who, during the Class Period, (1) remained Plan participants or beneficiaries for any length of time, (2) ceased to be employed by a participating employer before or during the period of time that they remained in the Plan, and (3) did not receive any portion of the mandatory revenue credit contributed to the FMR LLC Retirement Savings Plan pursuant to § 5.1(e) of the 2014 Restatement of the Plan (as amended) and §1.12(b)(3) of the 2017 Adoption Agreement for use with the Fidelity Basic Plan Document No. 17 for the Plan (as amended) issued by FMR LLC in any Plan year or portion of a Plan year in which they maintained a Plan account balance and were no longer employed by a participating employer. Excluded from the class are Individual Board Members and Individual Committee Members.

*Settlement Agreement ¶ 1.11.* This Class closely tracks the class certified by the Court in its prior Class Certification Order. *See* ECF No. 83. Based on information provided by Defendants' counsel, there are approximately 41,000 Class Members.

4.      Under the Settlement, Fidelity will cause its insurers to contribute $28,500,000 to a Qualified Settlement Fund for the benefit of the Class. *Settlement Agreement ¶¶ 1.31, 4.1, 4.2.* The net proceeds of this Settlement Fund (after accounting for any attorneys' fees, expenses, and class representative Service Awards approved by the Court) will be distributed *pro rata* among eligible Class Members in proportion to their quarterly account balances in the Plan over the Class Period, as spelled out in Paragraph 5.1 of the Settlement Agreement.

5.      The Plan accounts of Participant Class Members will be automatically credited with their share of the Qualified Settlement Fund. *Id. ¶ 5.2.* Former Participant Class Members who no longer have a Plan account will be required to submit a claim form, which allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a check. *Id. ¶¶ 1.5, 5.3.*[2]

---

[2] The claim form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks. This was an important consideration here because all of the Class Members are former employees, and because the Former Participant Class Members are no longer affiliated with the Plan.

6.      The $28.5 million Gross Settlement Amount is substantial in relation to other ERISA 401(k) settlements, and well above the average for such cases.  This amount represents approximately 1.11% of Class Members' assets in the Plan's "Open Architecture Window" exclusive of PAS-W ($2.567 billion) which were the assets upon which Plaintiffs' remaining claims were focused as of the point when the settlement was negotiated.[3] *See ECF No. 125-2 (Strombom Expert Report) at 70.*  Even if PAS-W assets are included, the settlement amount still represents 0.76% of assets, *id.*, which also falls within the range of other recent 401(k) settlements, as shown by the chart on the following page:[4]

---

[3] Plaintiffs had already withdrawn their claims relating to PAS-W at the time of the Settlement and stipulated that they would "not seek to recover losses or other monetary relief for assets of the [] Plan invested through the [] PAS-W managed account option." *ECF No. 229.* Assets held in the Plan's target-date funds (the Fidelity Freedom Funds) are also excluded because Plaintiffs did not assert claims with respect to those funds *See ECF No. 154 at 14* ("Plaintiffs make no claim relating to the Freedom Funds").

[4] *See Brotherston v. Putnam Investments, LLC*, No. 1:15-cv-13825, ECF No. 214 (D. Mass. Apr. 17, 2020); *Velazquez v. Mass. Fin. Servs. Co.*, No. 17-CV-11249, ECF No. 108 (D. Mass. Dec. 5, 2019); *Price v. Eaton Vance Corp.*, No. 18-12098, ECF No. 41-6 (D. Mass. May 17, 2019); *Schultz v. Edward D. Jones & Co.*, No. 4:16-CV-1346-JAR, ECF No. 93-1 (E.D. Mo. Dec. 11, 2018); *Sims v. BB&T Corp.*, No. 1:15-CV-00732, ECF No. 437 (M.D.N.C. Nov. 30, 2018); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 1:15-CV-09936-LGS, ECF No. 322-1 (S.D.N.Y. Aug. 14, 2018); *Richards-Donald v. Teachers Insurance & Annuity Assoc. of Am.*, No. 15-CV-08040-PKC, ECF No. 46 (S.D.N.Y. April 30, 2017); *Yost v. First Horizon National Corp.*, No. 2:08-02293-STA, ECF No. 190 (W.D. Tenn. May 2, 2012); *Abbott v. Lockheed Martin Corp.*, No. 06-701-MJR-DGW, ECF No. 491-1 (S.D. Ill. Feb. 20, 2015); *Spano v. Boeing Co.*, No. 3:06-cv-00743-DRH-DGW, ECF No. 554-1 (S.D. Ill. Nov. 5, 2015); *Nolte v. CIGNA Corp.*, No. 2:07-CV-02046-HAB-DGB, ECF No. 398-1 (C.D. Ill. June 21, 2013); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, ECF No. 44-2 (M.D.N.C. Nov. 9, 2015); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-CV-30184-MAP, ECF No. 107-2 (D. Mass. June 15, 2016); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 (SRN/JSM), ECF No. 597-1 (D. Minn. Mar. 26, 2015); *Main v. Am. Airlines, Inc.*, No. 4:16-CV-00473-O, ECF No. 127-2 (N.D. Tex. July 7, 2017); *Figas v. Wells Fargo & Co.*, No. 08-cv-4546 (PAM/FLN), ECF No. 257-1 (D. Minn. Mar. 18, 2011); *Bilewicz v. FMR LLC*, No. 13-10636-DJC, ECF No. 53-1 (D. Mass. July 3, 2014); *Urakhchin v. Allianz Asset Management of America, L.P.*, No. 8:15-cv-01614, ECF No. 174 (C.D. Cal. Dec. 26, 2017); *Dennard v. Transamerica Corp.*, No. 1:15-cv-00030-EJM, ECF No. 86-1 (N.D. Iowa); *Andrus v. N.Y. Life Ins. Co.*, No. 16 Civ. 5698 (KPF), ECF No. 66-1 (S.D.N.Y. Feb. 14, 2017); *Anderson v. Principal Life Ins. Co.*, No. 4:15-cv-00119-JAJ-HCA, ECF No. 23-3 (S.D. Iowa). The plan asset

| Defendant | Date Settled | Settlement Amount | Plan Assets in Year Settled | Settlement % of Plan Assets |
|---|---|---|---|---|
| **Putnam** | 4/17/2020 | $12,500,000 | 650,995,499 (2018)[5] | 1.90% |
| **Mass. Fin. Servs. Co.** | 11/21/2019 | $6,875,000 | $852,593,167 (2018) | 0.80% |
| **Eaton Vance** | 5/17/2019 | $3,450,000 | $517,671,902 (2018) | 0.66% |
| **Edward Jones** | 12/11/2018 | $3,175,000 | $5,859,210,627 | 0.05% |
| **BB&T** | 11/30/2018 | $24,000,000 | $4,632,550,462 | 0.52% |
| **Deutsche Bank** | 8/14/2018 | $21,900,000 | $3,385,372,412 | 0.65% |
| **TIAA** | 5/10/2017 | $5,000,000 | $2,144,212,948 | 0.23% |
| **First Horizon** | 5/2/2012 | $6,000,000 | $369,591,201 | 1.62% |
| **Lockheed Martin** | 2/20/2015 | $62,000,000 | $30,447,099,819 | 0.20% |
| **Boeing** | 11/4/2015 | $57,000,000 | $47,130,387,730 | 0.12% |
| **Prudential/CIGNA** | 6/17/2013 | $35,000,000 | $3,988,214,734 | 0.88% |
| **Novant Health** | 11/10/2015 | $32,000,000 | $969,670,230 | 3.30% |
| **MassMutual** | 6/15/2016 | $30,900,000 | $2,452,976,418 | 1.26% |
| **Ameriprise** | 3/26/2015 | $27,500,000 | $1,546,494,029 | 1.78% |
| **American Airlines** | 7/7/2017 | $22,000,000 | $9,049,168,285 (2016) | 0.24% |
| **Wells Fargo** | 3/18/2011 | $17,500,000 | $22,208,369,556 | 0.08% |
| **Fujitsu** | 12/6/2017 | $14,000,000 | $1,345,757,113 (2016) | 1.04% |
| **Bilewicz v. Fidelity** | 7/1/2014 | $12,000,000 | $13,250,740,623 | 0.09% |
| **Allianz** | 12/26/2017 | $12,000,000 | $968,400,158 (2016) | 1.23% |
| **Transamerica/Aegon** | 5/19/2016 | $3,800,000 | $1,723,051,884 | 0.22% |

information in the chart was sourced from the plans' publicly filed Form 5500s, available at https://www.efast.dol.gov/welcome.html.

[5] Asset figures are reported for 2018 because 2019 year-end data is not yet available from Form 5500 filings with the Department of Labor.

4

| | | | | |
|---|---|---|---|---|
| **NY Life** | 2/14/2017 | $3,000,000 | $3,470,850,000 (2016) | 0.09% |
| **Principal** | 6/29/2015 | $3,000,000 | $2,116,933,587 | 0.14% |

7. Based on the most recent calculations of Plaintiffs' damages expert, Dr. Steve Pomerantz, the $28.5 million recovery constitutes approximately 84% of the Class's alleged damages due to failure to monitor recordkeeping expenses ($33.9 million), and a full recovery based on the raw amount of the damages for that claim ($27.97 million) before any present value adjustment. *See Supplemental Expert Report of Steve Pomerantz (June 3, 2020)* (attached as **Exhibit B**) at ¶ 13. Although Plaintiffs also alleged damages in connection with the failure to monitor certain Fidelity mutual funds, Dr. Pomerantz stated in his original expert report that there was a partial "overlap" between the damages associated with a failure to monitor recordkeeping fees and the damages related to the failure to monitor certain Fidelity mutual funds. *See Expert Report of Steve Pomerantz, ECF No. 131-01, ¶ 141* ("Any losses associated with excess Recordkeeping Offsets/Revenue Credits would overlap with the combined losses measured within the Benchmark Index and Sector Models."). Even disregarding this overlap, the $28.5 million recovery represents approximately 29.2% of the total estimated damages (both damages associated with a failure to monitor recordkeeping fees and damages related to the failure to monitor certain Fidelity mutual funds), and an even higher percentage if the overlap is considered.[6]

---

[6] Of Dr. Pomerantz's various models, his highest measure of damages related to the failure to monitor certain Fidelity mutual funds was his Benchmark Index Model, which estimated $53.4 million in such damages exclusive of sector funds. *Exhibit B, ¶ 8.* Dr. Pomerantz separately calculated an additional $10.4 million in damages attributable to sector funds, *id. ¶ 9*, for a total of $63.8 million in alleged damages related to the failure to monitor certain Fidelity mutual funds.

8. In addition to this monetary compensation, the Settlement provides that the following procedures shall apply to the management of the Plan on a prospective basis beginning no later than 30 days after the Settlement Effective Date:

(a) One or more Plan fiduciaries will undertake to monitor Plan recordkeeping fees; and

(b) One or more Plan fiduciaries will undertake to monitor the Plan's investment options, other than any investments available through the Plan's self-directed brokerage account.

*Settlement Agreement ¶ 6.1.*

9. In the absence of a settlement, Plaintiffs would have faced uncertainty and risk in connection with their claims. Given these risks (which are outlined in the accompanying Memorandum of Law), and the costs and potential delays associated with further litigation, I believe that the Settlement that was negotiated is fair, reasonable, and adequate.

### Case Proceedings

10. Prior to filing the Complaint in this action, my colleagues and I conducted a thorough investigation of the claims that were asserted and the factual basis for those claims. As a result of our investigatory efforts, we were able to file a detailed, 59-page Complaint on October 10, 2018 (ECF No. 1). We subsequently filed a First Amended Complaint on November 9, 2018 (ECF No. 31)), and a Second Amended Complaint on January 10, 2019 (ECF No. 37), a Third Amended Complaint on March 25, 2019 (ECF No 56) and the operative Fourth Amended Complaint on May 2, 2019 (ECF No. 77).

11. Prior to reaching a Settlement, the Parties engaged in extensive written discovery, as summarized below:

| Discovery Request | Served | Responded |
|---|---|---|
| Plaintiffs' First Set of Requests for Admission | 4/15/2019 | 5/15/2019 |
| Plaintiffs' First Set of Interrogatories | 11/8/2018 | 12/10/2018<br>4/17/2019 |

6

| | | |
|---|---|---|
| Plaintiffs' Second Set of Interrogatories | 4/3/2019 | 5/2/2019 |
| Plaintiffs' Third Set of Interrogatories | 4/15/2019 | 5/15/2019 |
| Plaintiffs' First Set of Requests for Production | 11/2/2018, 12/21/2018 3/6/2019 | 12/3/2018, 1/25/2019 |
| Plaintiffs' Second Set of Requests for Production | 4/3/2019 | 5/3/2019 |
| Defendants' First Set of Interrogatories | 2/12/2019 | 3/29/2019 |
| Defendants' First Set of Requests for Production | 2/12/2019 | 3/29/2019, 4/10/2019 |

12. The parties' written discovery efforts generated a substantial record. In total, Defendants produced more than 151,000 pages of documents, and Plaintiffs produced over 32,000 pages of documents. These document productions are summarized below:

| **Producing Party** | **Bates Range** | **Date** |
|---|---|---|
| Defendants | FID0000001-5301 | Dec. 10, 2018 |
| Defendants | FID0005302-6447 | Dec. 21, 2018 |
| Defendants | FID0006448-23580 | Jan. 31, 2019 |
| Plaintiffs | MOITOSO0000001-1131 | Feb. 4, 2019 |
| Defendants | FID0023581-24695 | Feb. 28, 2019 |
| Defendants | FID0024696-24829 | March 22, 2019 |
| Defendants | FID0024830-39784 | March 25, 2019 |
| Defendants | FID0039785-41664 | March 29, 2019 |
| Plaintiffs | MOITOSO0001132-14889 | March 29, 2019 |
| Defendants | FID0041665-41666 | April 3, 2019 |
| Defendants | FID0041667-48988 | April 9, 2019 |
| Plaintiffs | MOITOSO0014890-23126 | April 10, 2019 |
| Defendants | FID0048989 | April 17, 2019 |
| Plaintiffs | MOITOSO0023127-24123 | April 18 2019 |
| Defendants | FID0048991-126914 | April 24, 2019 |
| Defendants | FID0126915-127519 | April 26, 2019 |
| Plaintiffs | MOITOSO0024124-24351 | April 26, 2019 |
| Defendants | FID0127520-129067 | May 1, 2019 |
| Plaintiffs | MOITOSO0024352-24367 | May 8, 2019 |
| Defendants | FID0129068-134989 | May 8, 2019 |
| Defendants | FID0134990-146851 | May 10, 2019 |
| Defendants | FID0146852-151954 | May 15, 2019 |
| Plaintiffs | MOITOSO0024368-29170 | May 31, 2019 |

13. The parties also took thirteen depositions of fact witnesses (nine defense witnesses and all four Named Plaintiffs), as set forth below:

7

|  | **Deponent** | **Date** |
|---|---|---|
| Current and Former Fidelity Employees | Cindy Silva | 2/8/2019 |
|  | Ralph Derbyshire | 4/30/2019 |
|  | Jennifer Hanson | 5/3/2019 |
|  | William Ackerman | 5/8/2019 |
|  | Seamus Dromey | 5/10/2019 |
|  | Bradley Lane MacDonald | 5/14/2019 |
|  | Kevin Brannick | 5/14/2019 |
|  | Steven Schiffman | 5/15/2019 |
|  | Daniel De Ladurantaye | 8/8/2019 |
| Plaintiffs | Mary Lee Torline | 4/29/2019 |
|  | Kevin Moitoso | 5/1/2019 |
|  | Sheryl Arndt | 5/2/2019 |
|  | Tim Lewis | 5/3/2019 |

14. In addition, Class Counsel consulted with four experts in the course of the litigation (Dr. Steve Pomerantz, Dr. Ian Ayres, James Scheinberg and Marcia Wagner), reviewed their expert reports, and engaged in expert discovery. This included defending Plaintiffs' experts and taking Defendants' expert depositions, as set forth below:

| **Expert** | **Deposition Date** |
|---|---|
| Ian Ayres | 7/30/2019 |
| James Scheinberg | 7/30/2019 |
| Steve Pomerantz | 8/1/2019 |
| Jonathan Reuter | 8/7/2019 |
| Bruce Strombom | 8/9/2019 |
| Phillip Suess | 8/9/2019 |
| Marcia Wagner | 8/27/2019 |

15. The parties also litigated several motions, including Defendants' motion to strike Plaintiffs' jury demand (*ECF No. 72*), Defendants' motion for bifurcation (*ECF No. 121*), cross-motions for summary judgment (*ECF Nos. 135, 139*), motions in limine (*ECF Nos. 195, 197*), *Daubert* motions (*ECF Nos. 123, 126, 129, 132*), and a separate motion by Defendants to strike two of Dr. Pomerantz's damages models (*ECF No. 114*).

16. On November 5, 2019, the Parties sent a joint letter to the Court requesting that, if summary judgment was not dispositive of the issues that had been presented on summary

8

judgment, the breach issues could be resolved on a "case-stated" basis. On November 7, 2019, the Court held a summary judgment hearing in which it agreed to review the breach issues on a case-stated basis, *ECF No. 216*, and subsequently held a case stated hearing on November 20, 2019. *ECF No. 222*. The Court then issued its Case Stated Order on March 27, 2020. *ECF No. 224.* The Court's Case Stated Order addressed only the question of breach, not loss or causation. Those issues were set for trial beginning July 6, 2020. *ECF No. 232*.

17.     Approximately one month before trial, on June 5, 2020, the Parties agreed to submit the remaining loss and causation issues associated with failure to monitor recordkeeping expenses to the Court on a case stated basis. *ECF  No. 237*; *see also ECF No. 238* (adopting parties' case stated proposal). However, the issues of loss and loss causation with respect to the failure to monitor certain funds claims remained to be tried. *Id.*

18.     The Parties then engaged in several rounds of direct settlement negotiations in June 2020, and eventually reached a settlement-in-principle. The Parties reported their settlement to the Court on June 18, 2020. *See ECF No. 240.* The terms of that Settlement are memorialized in the Settlement Agreement that is the subject of present motion.

### **Professional Background**

19.     I am licensed to practice law in the State of Minnesota, and also have been admitted to practice in several federal district courts and appellate courts across the country. A list of jurisdictions in which I have been admitted is set forth below:

| Supreme Court of the United States |
| --- |
| 1st Circuit Court of Appeals |
| 2nd Circuit Court of Appeals |
| 3rd Circuit Court of Appeals |
| 6th Circuit Court of Appeals |
| 8th Circuit Court of Appeals |
| 9th Circuit Court of Appeals |
| U.S.D.C. for the Eastern District of Michigan |

| |
|---|
| U.S.D.C. Western District of New York |
| U.S.D.C. Minnesota |
| Minnesota Supreme Court |

I am in good standing in every jurisdiction in which I have been admitted to practice.

20.     I have been actively engaged in the practice of law since 1999, and have substantial class action experience and other complex litigation experience.

21.     Since joining Nichols Kaster in April 2010, my practice has focused exclusively on class action cases. I have been appointed class counsel for litigation or settlement purposes in over twenty class cases. In connection with those cases, I have personally negotiated class action settlements providing for more than $300 million in available relief to class members nationwide.

22.     The principal types of cases that I have handled at the firm are consumer class actions and ERISA class actions.

23.     As a former leader of our firm's Consumer Class Action Team, I spearheaded class action litigation against several major financial institutions, including JPMorgan Chase, Bank of America, U.S. Bank, Wells Fargo, Citibank, GMAC Mortgage, RBS Citizens, and MidFirst Bank. For example, I successfully argued contested class certification motions in *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), successfully argued before the First Circuit Court of Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), and successfully argued and/or briefed dispositive motions in numerous other consumer class cases, including *Jackson v. Wells Fargo Bank, N.A.*, 2013 WL 5945732 (W.D. Pa. Nov. 7, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); *Berger v. Bank of America, N.A.*, 2013 WL 1164497 (D. Mass. Mar. 21, 2013); *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012); *Ulbrich v.*

*GMAC Mortgage, LLC*, 2012 WL 3516499 (Aug. 15, 2012); *Walls v. JPMorgan Chase Bank, N.A.*, 2012 WL 3096660 (W.D. Ky. July 30, 2012); *Skansgaard v. Bank of America, N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011); and *Wulf v. Bank of America, N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. June 27, 2011).

24. I am currently co-leading our firm's ERISA Class Action Team. In addition to the present case, the firm's lawyers (including myself) have been appointed class counsel for litigation and/or settlement purposes in fifteen other retirement plan cases, as set forth below:

- *Brotherston v. Putnam Investments, LLC*, 1:15-cv-13825 (D. Mass.);

- *Andrus v. NY Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y.);

- *Main v. American Airlines, Inc.*, No. 3:16-cv-01033 (N.D. Tex.);

- *Bowers v. BB&T Corp.*, No. 1:15-cv-00732 (M.D.N.C.);

- *Stevens v. SEI Invs. Co.*, No. 2:18-cv-04205 (E.D. Pa.);

- *Urakhchin v. Allianz Asset Management of America, L.P.*, No. 8:15-cv-01614 (C.D. Cal.);

- *Johnson v. Fujitsu Tech. & Bus. of America, Inc.*, No. 5:15-cv-03698 (N.D. Cal.);

- *In re M&T Bank Corp. ERISA Litig.*, 1:16-cv-00375 (W.D.N.Y.);

- *Wildman v. American Century Servs., LLC*, No. 4:16-cv-00737 (W.D. Mo.);

- *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936 (S.D.N.Y.);

- *Clark v. Oasis Outsourcing Holdings Inc.*, No. 9:18-cv-81101 (S.D. Fla.); and

- *Velazquez v. Massachusetts Financial Services Co.*, No. 1;17-cv-11249 (D. Mass.); and

- *Beach v. JPMorgan Chase Bank, N.A.*, No. 1:17-cv-00563 (S.D.N.Y);

- *Larson v. Allina Heath System*, No. 17-cv-03835 (D. Minn.); and

- *Mass v. The Regents of the University of California*, No. RG17-879223 (Alameda County Super. Ct.).

25. Our firm took the *Putnam* and *American Century* cases to trial in April 2017 and September 2018, respectively. We received final court approval of class action settlements in *New York Life*, *American Airlines*, *BB&T*, *SEI*, *Allianz, Fujitsu, Deutsche Bank, Oasis*, and *Massachusetts Financial Services*, and *Allina*, also recently received preliminary Court approval of settlements with *Putnam* and *M&T*. We won contested class certification motions in our cases against Putnam, BB&T, Allianz, American Century, Deutsche Bank, JPMorgan Chase, and the University of California. We also defeated motions to dismiss in several of these cases in whole or in part (*Putnam*, *American Airlines*, *BB&T*, *Allianz*, *Fujitsu*, *M&T*, *American Century*, *Deutsche Bank*, *Massachusetts Financial Services*, *JPMorgan Chase*, and *University of California*), as well as in *Morin v. Essentia Health*, 2017 WL 4083133 (Sept. 14, 2017), *report and recommendation affirmed,* 2017 WL 4876281 (D. Minn. Oct. 27, 2017), *Reetz v. Lowe's Companies, Inc.*, 2019 WL 4233616 (W.D.N.C. Sept. 6, 2019), *Nelsen v. Principal Global Investors Trust Company*, 362 F. Supp. 3d 627 (S.D. Iowa 2019), *Karpik v. Huntington Bancshares Inc.*, 2019 WL 7482134 (S.D. Ohio Sept. 26, 2019), and *Intravaia v. National Rural Electric Cooperative Association*, 2020 WL 58276 (E.D. Va. Jan. 2, 2020).

26. The firm is viewed as a leader in ERISA 401(k) cases. According to a recent Bloomberg BNA article, "Nichols Kaster has been the driving force" behind recent 401(k) self-dealing litigation. *See* Jacklyn Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg BNA (Oct. 17, 2016). Attorneys from Nichols Kaster have been interviewed by National Public Radio (for the program "All Things Considered"), the Wall Street Journal, Bloomberg, Financial Times, Investment News, Bankrate.com, and several trade publications in connection with their ERISA work. I also have spoken by invitation at several national conferences and seminars on ERISA litigation, including (1) a webinar on "Fee Litigation" sponsored by the American Bar

Association (November 12, 2019); (2) an employee benefits program sponsored by the American Law Institute (October 24, 2019); (3) a Professional Liability Directors & Officers conference on a panel regarding "Plan Fee Litigation" (February 6, 2019); (4) an American Bankers Association Insurance Risk Management Conference on a panel concerning excessive fee ERISA class actions (February 5, 2019); (5) an American Law Institute webcast on Excessive Fee Litigation (November 28, 2018); (6) the American Law Institute's tax-exempt and government plans education series (September 24, 2018), where I co-presented on "The Current State of Fee Litigation and Its Implications"; (7) the American Conference Institute's National Forum on ERISA Litigation (on both March 1, 2017 and November 2, 2017), where I was a member of the "Fiduciary Investment Litigation Update" panel; and (8) the Retirement Advisor Council's annual meeting (May 22, 2018), where I was a member of a panel on "The Moving Litigation Frontier".

27. Based on my personal experience[7] and Nichols Kaster's firm-wide experience litigating ERISA cases, I believe that we were well-equipped to negotiate the Settlement that was reached in this case. For further background, a copy of our firm resume is attached as **Exhibit C**.

---

[7] Prior to joining Nichols Kaster, I served as the Manager of the Complex Litigation Division of the Office of the Minnesota Attorney General. During my tenure there (from February 2008 to March 2010), I supervised and handled a large number of complex matters. For example, in June and September of 2009, I co-chaired a three-week trial involving claims for fraudulent sales of annuities and legal plans to over 1,200 Minnesota senior citizens, which ultimately resulted in a favorable judgment from the trial court. In addition, I handled a significant consumer enforcement action against Sprint Nextel related to wrongfully-imposed contracts and termination fees, which resulted in a comprehensive settlement in October of 2009.  I also had significant prior class action experience in private practice, including two multi-week class action trials: a statewide wage and hour class action against Wal-Mart Stores in Minnesota (tried in 2007) and a landmark class action against the University of Michigan Law School. *See Grutter v. Bollinger*, 539 U.S. 306 (2003).  I received my law degree from the University of Minnesota Law School in 1999, and my B.A. from Dartmouth College in 1995.

**Settlement Administrator**

28. Analytics Consulting, LLC ("Analytics") has been selected to serve as the settlement administrator in this matter. Analytics has extensive experience administering class action settlements, and is also serving as the Settlement Administrator in connection with the *Eaton Vance* and *Putnam* 401(k) settlements that the Court recently approved. A copy of Analytics' company profile is attached as **Exhibit D**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 2, 2020                                          s/Kai Richter
                                                             Kai Richter